UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KRISHNA MAGANTI,

                    Plaintiff,

-v-

QUICK PETROLEUM, INC., et al.,

                    Defendants.

Case No. 16-CV-4927 (KMK)

ORDER

KENNETH M. KARAS, District Judge:

On June 24, 2016, Plaintiff Krishna Maganti ("Plaintiff") brought this Action against

Quick Petroleum, Inc., Asif Javed a/k/a Asif Ali, and Hamid Din (collectively, "Defendants"),

pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq. and New

York Labor Law. (*See* Am. Compl. ¶¶ 1–2 (Dkt. No. 16).) Plaintiff alleges that Defendants: (1)

paid Plaintiff at a wage less than the statutory minimum wage; (2) failed to pay Plaintiff overtime

wages; (3) made unlawful wage deductions during the period of his employment; and (4)

violated the Wage Theft Prevention Act. (*Id.*)

On August 14, 2017, the Parties submitted a Letter from Plaintiff's counsel regarding the

request for Settlement Approval, (Letter from Jeanne M. Lane, Esq., to Court (August 14, 2017)

("Lane Letter") (Dkt. No. 31).), along with an accompanying Settlement Agreement and Release

(the "Proposed Settlement"), (*see id.* Ex. A). For the reasons to follow, the Court approves the

Proposed Settlement.

Under Federal Rule of Civil Procedure 41(a)(1)(A), a plaintiff's ability to dismiss an

action without a court order is "[s]ubject to . . . any applicable federal statute." "Except as

provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." *See* Fed. R. Civ. P. 41(a)(2). The Second Circuit has confirmed that the FLSA is an "applicable federal statute," such that "Rule 41 (a)(l)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016). Consequently, "the [P]arties must satisfy the Court that their agreement is 'fair and reasonable.'" *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015); *see also Velasquez v. SAFI-G, Inc.*, No. 15-CV-3068, 2015 WL 5915843, at *1 (S.D.N.Y. Oct. 7, 2015) (same).

When assessing a proposed settlement for fairness, there is generally "a 'strong presumption in favor of finding a settlement fair,' as 'the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement.'" *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quoting *Crabtree v. Volkert, Inc.*, No. 11-CV-529, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013)); *see also Souza v 65 St Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

As a number of courts have recognized, to determine whether a proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including but not limited to the following factors:

(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length

bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Penafiel*, 2015 WL 7736551, at\* 1 (internal quotation marks omitted) (quoting *Wolinsky v.*

*Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)); *see also Garcia v. Jambox, Inc.*, No.

14-CV-3504, 2015 WL 2359502, at \*2 (S.D.N.Y. Apr. 27, 2015) (same); *Camacho v. Ess-A-*

*Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at \*2 (S.D.N.Y. Dec. 11, 2014) (same).

Factors that weigh against finding a settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA noncompliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Penafiel*, 2015 WL 7736551, at \* 1 (internal quotation marks omitted) (quoting *Wolinsky*, 900 F.

Supp. 2d at 336); *see also Garcia*, 2015 WL 2359502, at \*2 (same); *Camacho*, 2014 WL

6985633, at \*2 (same). Making this determination is thus an information-intensive undertaking,

*Camacho*, 2014 WL 6985633, at \*2, and "the parties must provide the [C]ourt with enough

information to evaluate the bona fides of the dispute," *Gaspar v. Pers. Touch Moving, Inc.*, No.

13-CV-8187, 2015 WL 7871036, at \*1 (S.D.N.Y. Dec. 3, 2015) (internal quotation marks

omitted). To this end, courts require information surrounding "the nature of [the] plaintiffs'

claims, the litigation and negotiation process, the employers' potential exposure . . . to [the]

plaintiffs . . . , the bases of estimates of [the] plaintiffs' maximum possible recovery, the

probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee

award." *Id.* (alteration and internal quotation marks omitted).

Having reviewed the Proposed Settlement, the Court is satisfied that it was negotiated in

good faith at arms' length and that there was no fraud or collusion. The Court is also satisfied,

3

based on the Parties' representations, that the settlement will allow the Parties to avoid the anticipated burdens of litigation and that Plaintiff faces risk of non-payment even if the case is litigated to completion with a successful result for Plaintiff given Defendants' "limited means and resources to contribute to a greater settlement or withstand a greater judgment." (*See* Lane Letter 10–11.)

Additionally, the Court approves the Proposed Settlement's release provision. "[T]he FLSA is a uniquely protective statute," *Cheeks*, 796 F.3d at 207, and courts will not approve settlement agreements that contain overly broad release provisions that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," *id.* at 206 (internal quotation marks omitted) (quoting *Lopez v. Nights of Cabiria*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)); *see also Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action."); *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (rejecting a settlement agreement where "the parties' release language . . . include[d] 'actions and/or claims against the [d]efendants, known or unknown, which [the plaintiff] may have as of the date of this [a]greement including but not limited to any alleged violation of any federal, state or local law, regulation, rule or ordinance which relates in any way to [the] [d]efendants' payment of wages to [the] [p]laintiff during [the] [p]laintiff's employment with [the] [d]efendants'"); *Flood v. Carlson Rests. Inc.*, No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (rejecting a settlement agreement that, in effect, "waive[d] any possible claims against [the] [d]efendants—

4

including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues").

Here, the proposed release provision provides: "Plaintiff forever and fully releases Defendants from all Plaintiff's Released Claims and Defendants forever and fully release plaintiff and his heirs, agents, executors, or administrators from all Defendants' Released Claims." (Proposed Settlement at 5.) While this appears overly broad on its face, the definition of Plaintiff's Released Claims sufficiently narrows the release provision, defining the Plaintiff's Released Claims as:

> all wage, hour and notice claims that were or could have been asserted under federal or New York State law by or on behalf of Plaintiff in the Litigation for the period of June 1, 2013 through the date hereof, including under the FLSA and the NYLL. The Plaintiff's Released Claims mean wage, hour, and notice claims raised in this Litigation and any wage, hour, and notice claims that could have been asserted by Plaintiff against Defendants under New York State and federal law, including the FLSA, relating to the failure to pay wages, back wages, overtime, minimum wages, unlawful deductions, interest, liquidated damages, penalties, and attorney's fees, provided, however, that Defendants shall only be released in their capacity as employers of Plaintiff by, through, on behalf of, or by reason of Quick Petroleum, Inc.

(*Id.* at 3–4.) Because the release relates only to wage, hour, and notice claims under New York and federal law, as asserted in this Action and as asserted against Defendants in their capacity as employers vis-à-vis Quick Petroleum, Inc., (*id.*), the Court is satisfied that the provision is sufficiently narrow. Moreover, to the extent the release is beyond the claims directly asserted in this Action, that release of claims is mutual, (*id.*), which is sufficient to satisfy the FLSA, *see, e.g.*, *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223, at *2 ("[T]he [s]ettlement provides for both a waiver of claims against [the] [d]efendants and a waiver of claims against [the] [p]laintiffs, assuaging concerns that the waiver unfairly benefits only [the] [d]efendants.").

5

With respect to the range of possible recovery, the Parties have included the underlying data upon which they relied in determining the maximum allowable damages for each Plaintiff. (*See* Lane Letter 4–11.) This data includes information as to the number of hours worked by the Plaintiff, the applicable wage, the wage paid for those hours wherein Plaintiff was alleged to have paid less than the minimum wage, and the statutory rate of prejudgment interest. (*See id; see also id.* at Ex. B.) Having reviewed the documentation, the Court is satisfied that the Parties have reliably calculated a thorough accounting of Plaintiff's maximum recovery in this Action to be $48,487. Given the representations of the Parties regarding the Defendants' lack of documentation and employment records and Plaintiff's likelihood of success should the case proceed to trial, the Court is satisfied that the settlement amount of $45,000 for Plaintiff is reasonable.

Finally, with respect to the attorney's fees, the Parties have submitted adequate information to support the reasonableness of the request. Under the FLSA, a successful plaintiff, including one who settles, is entitled to attorney's fees. *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015 WL 4006896, at \*2 (S.D.N.Y. July 1, 2015). In the Second Circuit, courts generally draw on the following considerations—commonly known as the "*Goldberger* factors"—when assessing the reasonableness of attorney's fees: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (alteration and internal quotation marks omitted).

When requesting attorney's fees in an FLSA case, "counsel must submit evidence providing a factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336 (S.D.N.Y. 2012).

6

Although courts may elect to award fees by either considering the lodestar method—the
reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended—
or the percentage method—a percentage of the total amount recovered by the plaintiff—"[t]he
trend in [the Second] Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa
U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). Even where attorney's fees are sought pursuant to
the percentage of the fund method, "counsel must submit evidence providing a factual basis for
the award." *Wolinsky*, 900 F. Supp. 2d at 336; *see also Guareno v. Vincent Perito, Inc.*, No. 14-
CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual
basis for a fee award, typically with contemporaneous time records."). A proper fee request thus
includes "contemporaneous billing records documenting, for each attorney, the date, the hours
expended, and the nature of the work done." *Lopez*, 96 F. Supp. at 181. The Court must also
determine the reasonable hourly rate by considering the "prevailing market rate for lawyers in
the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d
504, 507 (S.D.N.Y. 2012).

Plaintiff's counsel seeks a fee award of one-third of the total recovery, that is, $14,749.16
of the $45,000 settlement amount, following the deduction of costs and expenses of $708.22.
(*See* Lane Letter 11–12.) Courts in the Second Circuit frequently award attorneys in FLSA
settlements 33% of the total recovery in fees. *See Garcia v. Atlantico Bakery Corp.*, No. 13-CV-
1904, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the
customary contingency percentage in FLSA cases."); *see also Ocasio v. Big Apple Sanitation,
Inc.*, No. 13-CV-4758, 2016 WL 5376241, at *2 (E.D.N.Y. Mar. 16, 2016) (noting that the fee
sought was "less than the typical contingency fee percentage of 33 1/3%"), *adopted by* 2016 WL
5390123 (E.D.N.Y. Sept. 26, 2016). The Court agrees that 33% of the total recovery is a

7

generally appropriate contingency fee amount, provided that it does not disproportionately compensate Plaintiff's counsel for the time and effort expended in this litigation.

Plaintiff's counsel has submitted a detailed rationale for the proposed $14,749.16 in attorney's fees. (*See* Lane Letter 13, Ex. C.) While Plaintiff's counsel did not identify the hourly rate at which it typically charges, (*see id.* at Ex. C 21), Plaintiff provides a detailed breakdown of 187 hours worked on this matter over the course of roughly one year by multiple attorneys representing plaintiff, (*see id.*). An average hourly rate for the proposed $14,749.16 in fees would be roughly $78 per hour, an amount that is more than reasonable for Plaintiff's counsel. *See, e g.*, *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 437 (S.D.N.Y. 2014) (finding that fees ranging from $250 to $450 are appropriate for experienced litigators in wage-and-hour cases). Additionally, a review of the supporting billing records does not indicate any unnecessary or duplicative work by Plaintiff's counsel. (*See* Lane Letter. Ex. C). Accordingly, the Court is satisfied that the proposed attorney's fees are reasonable.

For these reasons, the Court approves the Proposed Settlement. All claims having been settled, the Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 36), and close the case.

SO ORDERED.

Dated:        September 20, 2017
              White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

8